Case number 06-3696, People v. Martinez, Lenyoun Good morning. May it please the Court. My name is Matthew Connors and I appear on behalf of the people of the State of Illinois. This matter is here on the People's State Appeal, as we refer to it. And the question before this Court is whether the Circuit Court improperly allowed the defendant's motion to quash the warrant to search the defendant's house. There's basically two prongs to address here on appeal. The first is the Circuit Court's ruling which indicated that the warrant was insufficient because the registration of a vehicle in that case bore two different addresses. The Circuit Court found this dispositive at pages 17 and 18 of the record. But when you say dispositive, do you mean to say that because the registration could have been in either address that it eliminates probable cause? I mean, what's dispositive about that information? Why would Judge Tucker believe that that would be dispositive? Isn't it just a legal question, either there's probable cause or there's not? Yes, that is correct. That is the argument as framed by defense. Well, is that the argument? Is that the question before us? Probable cause? Yes, Your Honor. The purpose of the people highlighting this is basically to demonstrate the misapprehension engaged by the Circuit Court. The Circuit Court found this one fact compelling and based its entire ruling upon that. Therefore, it's incumbent upon the people to demonstrate the propriety of the contents of the affidavit and also to demonstrate the probable cause. So let me get this right. Your argument is that probable cause exists if only one address had been connected to that vehicle? No, because the vehicle itself and the address to the vehicle is immaterial to the question of probable cause. Right. That's what I was going to ask. If you dismiss the vehicle completely, then give us your best case scenario for probable cause. Ignoring the fact that the vehicle possibly has two different addresses. Okay. The best case scenario is... And my concern was really your reading of Judge Tucker's ruling as to whether that was really the basis for his granting the motion as opposed to addressing the really dispositive question of existence or not of probable cause. People gladly address the question of probable cause. And in this case, the probable cause is demonstrated through a number of factors. First and foremost, we have approximately six days of observations tying the defendant to that residence. We have on multiple days the defendant exiting the hillside address, running errands, dropping children off at school, dropping children off at daycare, going about his day-to-day transaction from that address. We also have the defendant engaging in three hand-to-hand transactions after leaving that location. Most notable is the one transaction where the buyer was stopped. Mr. Cox testified that he in fact contacted the same number that he had been using for 18 months. He contacted the defendant. The defendant arrived at a location in the same Buick that he had always driven. The two engaged in an narcotics transaction, and Mr. Cox was actually stopped after the transaction. So we have officers who observe the defendant leaving his hillside apartment, driving to a location, engaging in a narcotics transaction. And we know that, in fact, Mr. Cox was arrested with narcotics. Thus, we have multiple transactions all stemming from that location. We also have the inclusion in the common law record of five police reports all tying the defendant to the hillside address. We also have the defendant's driver's license tying himself to the hillside address. So let me ask you regarding the multiple police reports involving the defendant. Does that suggest that, well, first there's the concept of remoteness and whether or not that really should be the old police reports, characterizing like that, should really be considered at all in the probable cause analysis. But in any event, is probable cause sort of a matter of mounting information, regardless of how old it may be, so that the conclusion can be drawn that a crime has been committed and the proceeds or the contraband is located at a certain address, based on police reports connecting the defendant to a particular address? Well, it depends. If you're discussing a transient lifestyle where a person has multiple ties or moves frequently, you're not going to have something which demonstrates a tie to a community. Here we do have a consistent link between defendant and a given address. Well, but it isn't the only address connected to the defendant. And what should the police do regarding the Wheaton address or the Bellwood address? Should they simply disregard that and say, we're not going to consider that. We're only going to consider those reports that actually connect the defendant to the Hillside address, because that supports our claim that probable cause exists. Well, it depends on the basis for why the law enforcement is targeting that address. Well, they were actually targeting two addresses, didn't they? I mean, in this particular case, didn't they have surveillance on two different addresses? The surveillance that was listed was primarily addressed at the Hillside address. The only warrant that was targeted was for that. We do have the separate issuance of a warrant directly for the arrest of the defendant and his vehicle. No, but I'm saying from reading the search warrant, it appears that the officers were targeting the Hillside address and also a Wheaton address, but things happened at the Hillside address, and that's what's in the search warrant. Again, if the officers had knowledge, and based upon this up to date, it is clear that they had knowledge that the defendant had multiple locations, not just Wheaton. I mean, there was also the tie to a location in Bellwood. So the mere fact that the defendant has ties to multiple addresses, multiple locations, doesn't render this address any more constitutionally protected. Having multiple pieces of property doesn't change the calculation. But the question really is, what would feed a reasonable individual to believe that the contraband is in the Hillside address and not at the Bellwood address or not at the Wheaton address or not in some other location? And let me interject. Let's assume for a minute that you have successfully tied everything to, what is it, 110 Hillside. How do you then make the connection with 210? We have the first prong, tying everything to Hillside, stems from the defendant's engaged in narcotic transactions, which we can pinpoint based upon the observations. We do have on, I believe that was on the 16th, we do have the defendant leaving his home under surveillance and then engaging in a narcotics transaction. So we can tie the defendant's presence from the Hillside address to the known transfer of narcotics in exchange for money. So that would demonstrate what appears to be a nexus between that address and the narcotics trade. So the question then becomes 2E. Now, admittedly, the police don't go into the apartment and observe the defendant leaving on every occasion, but they do have the fact that the defendant's... Well, isn't that a problem? The rest of the observation, be it... How many apartments were there in that building? I believe that the warrant indicates that there were a total of six apartments in that building. But there is the tie to the apartment 2E, and then we do have the defendant coming and going from that apartment. You know, you brought up the issuance of the first warrant. Yes, sir. The first warrant authorized the officers to stop the defendant, search his body, as well as the vehicle. And obviously there's nothing that was obtained pursuant to that, to the execution of that warrant. My question concerns what new information developed from the point that the first warrant was executed and that the second warrant was requested. Well, initially the people would quibble with the notion that there had to be an additional... No, I'm just asking you, was there? If your answer is no new information, I'll accept that. Well, there was the recovery of $353, I believe, of U.S. currency, all of which a narcotics dog did indicate tested or indicated positive for trace residue of narcotics. So we do have... But that didn't come out as a surprise because you believed he was engaged in drug transactions anyway. Yes, and it's the people's position that had the people gone for... So was there anything new that developed after the execution of the first warrant and before the issuance of the second warrant? No, in between the hours on the... So the same information that was relied on for the issuance of the first warrant is exactly the same information that was relied on for the issuance of the second warrant, true? With addition of the recovery of the proceeds. With additional recovery of the U.S. currency, that is correct. But it is the people's position that the information contained in the first warrant could have been equally applicable to the search of his home at that point in time. But the police were basically exercising an abundance of caution and saying, we are going to attempt to... So what do you think would... What do you think caused the police to abandon that abundance of caution that led them to request a warrant only for the person's person, the defendant's person and vehicle in the first instance and requested a much broader search warrant in the second instance? To speculate as to the motives of officers. We both know what it is. We both know what it is. Isn't it fair to say that it was because the first warrant basically didn't recover what they expected to recover, and they know that it's somewhere, so they're going to look for it at the next likely spot that is likely to correct. And yet the question really is, what would lead the officers, what would lead a reasonable person to believe that the contraband is in that 2E apartment? And should we take into consideration the failure of the first warrant leading to the recovery of any contraband? Should that be part of the analysis? No, it should not. Because the failure of the first warrant to recover narcotics basically flows to the argument advanced by the defendant on appeal, saying the people did not establish that the defendant was basically engaging in a narcotic transaction out of his front door at the apartment. Let me interrupt once again. It raises a hypothetical question that I have, and that is of course there are a lot of street transactions that occur, and oftentimes the contraband is hidden elsewhere, and they go to that spot and recover. And let's say you have an exchange between the defendant and a buyer, and the defendant says, don't worry, this is my last one, but I have a lot of them available to you. And the police break it up right there, and they arrest both. And the police ask them, where do you live? And the defendant says, I live at this address. Would the police have the, based on the recovery of contraband there, based on his statement that I have a lot more available to me, would the police be able to go to a circuit court judge and ask for a warrant to search the defendant's home where he says he lives, as opposed to this case where the defendant says, I have no connection to that hillside address. Would the police have probable cause to go search that person's home where he admits that he has a lot more contraband available to him, and he admits that he lives at a particular address? If a reasoned, detached magistrate determines that that is probable cause, people can establish before somebody put that evidence forth. If you have an officer with experience in the field of narcotics, and all of those factors are satisfied, then yes. But again, the importance is to notice that it does go before a neutral magistrate who is given the opportunity to review all of the evidence. When you say neutral magistrate, you almost seem to suggest that the neutrality of that magistrate is conclusive to the issue of whether probable cause exists, or whether the magistrate got it right. So the objectiveness of the magistrate doesn't make any difference. It could be a law and order judge, a judge who never denied a warrant, who feels that every request should be granted by the police. But if there's probable cause, it doesn't make any difference. At the same point, if there's no probable cause, it doesn't make any difference either. That is correct. And, of course, the people's proposition is that if there is a finding of probable cause, by a magistrate, be it a cromine or a stater. Which raises the next question, and I'm skipping over a little bit, but how does good faith even come into play here? Well, the notion that there was no good faith. Well, I'm sorry. That was an unfair question. Let me ask it this way. Assuming we find no probable cause, does good faith have any role to play in this case? Yes, it does. Initially, the application of the good faith doctrine is targeting, basically to deter police misconduct. And in this case, there is no justifiable definition that there was police misconduct in obtaining this warrant. We do have an allegation made by the defense, and implicit in the court's ruling on page 26 and 27 of the record, is that there was not sufficient evidence to obtain a search. The implication of that, and the argument explicitly raised by counsel, is that this constitutes a, quote, bare bones affidavit. So the question is whether six days of observation, a driver's license tying the defendant to a location, a previous arrest where the vehicle in that case was registered to the defendant, a car that was observed at the defendant's hillside address being driven by a Paul Jones in front of the hillside address, whether all of that constitutes a bare bones affidavit. If it does not, and if it does not fall within the other four factors of the test, then yes, if the officers relied upon that warrant in good faith, then it would be proper to apply that and say, okay, good enough. But because the question I have is this. You say that good faith addresses police misconduct, and if there is no police misconduct, then good faith should be recognized. What does the Constitution require for the issuance of a warrant? The Constitution requires probable cause. Are you saying that good faith can swallow the probable cause requirement for the issuance of a warrant? Because my question was, in the first instance, if we find no probable cause, what matters? Good faith. To the extent that there is a finding of no probable cause, the good faith exception to that rule. It can't swallow the good faith requirement, can it? It doesn't swallow. It acts in conjunction. So where do we find probable cause even if we decide that good faith applies? We don't find probable cause. We find the officer's actions. If we don't find probable cause, isn't that the end of the analysis? No, because that would be a lack of probable cause. What authority do you have that says that good faith can satisfy, presumably satisfy the constitutional requirement for probable cause for the issuance of a warrant? To the extent that the court – good faith is not meant to be a replacement for probable cause. Good faith only arises if there is a determination that the warrant is lacking. So to suggest that the exception swallows the rule, the reverse is almost true. To say that if there's no probable cause, you can't have the exception, that was never the intention of the court. But what does the Constitution require? The people who said the Fourth Amendment does require a strong probable cause for the issuance of a warrant. So if there's no probable cause, doesn't that end the analysis? To the extent of the arguments advanced by the people in their brief, the people who said – there's no further – the people like to reserve the remaining time for rebuttal? The only thing is you said that there was nothing that the police got other than the money before they asked for the search warrant of the home, and that's just not what the search warrant says. And that's just for my partners. And I'm sure they've read it, but the search warrant doesn't say that the only thing that's recovered is money. The search warrant – I mean, yeah, the complaint search warrant says when they stop, the defendant not only does the money you have on him alert for drugs, but the car alerts for drugs. It also says they found the license, the driver's license, that goes to the 110 Hillside address to connect them with the address. It also says that they've got a piece of paper that says dope on it, and four business cards in it, one of which has the phone number on it, which is the same phone number that Cox, the person they arrested, with three packages of cocaine, says he always uses to contact the defendant. That is correct. We have a number of – So there are – I mean, there are other things that the officers added before they gave the search warrant to Judge Gap. And just so it's clear, there's no question in my mind that the information contained in the search warrant would lead any reasonable person to conclude that a crime has occurred. I believe Gates requires that there be a showing that there is a reasonable probability that the contraband is found in a particular place. And the question is what information was there to suggest that the contraband – the admittedly no dispute the existence of contraband or engaging in transactions by this defendant was in apartment 2E, even taking into account that he lives there? Well, again, Justice Lankin was correct to note that all of that evidence that came out as a result of the traffic stop tied defendant to the apartment 2E. And the fact that the defendant was observed driving directly from the apartment to a narcotics transaction would demonstrate to the officers that, in fact, had the defendant made a stop along the way and picked up narcotics from someplace else or had that – if there was a drop point, that would be a different set of factors. But in this case, the defendant was observed directly leaving from his apartment and then engaging in a transaction with no stops in between. So if the officers determined that the narcotics had to have come from someplace,  where there were narcotics and tendering them to customers in exchange for U.S. currency. Would your answer be different if it had been a 12-unit building rather than a 6-unit building? The focus on apartment 2E is relevant only to the extent that it ties the defendant to that location. But the officers knew directly what apartment they were targeting. This isn't a high-rise where there's 50 floors and they just see somebody walking in and they don't know where it's at. All of the contacts that they have had with the defendant have been stemming from this location. We do have the defendant's driver's license, people had mentioned previously, which ties him to that location and the registration on another vehicle tying him to that location. So we do have a nexus between apartment 2E and the defendant. What if the building had storage units for each of the apartments? Let me change the facts of this case a little. Let's say they didn't find it in 2E. Would they go back to the judge who issued the warrant and say, well, by the way, there's also a storage unit attached to this, they're connected to this apartment and we'd like to search that? What do you think the judge would have said? Sure, go ahead. If the search warrant had, the court's question, I believe, operates under the assumption that they didn't know about the existence of a shed in the apartment. If the officers had known about the existence of a storage unit or a garage or something like that, it's quite probable that they would have put that in. It's analogous to the curtilage cases where people say, we will search the area surrounding the house. In the city it's a little bit easier. You do have narcotics being recovered from under front steps or in fences or things like that. The location in the suburbs of saying, well, there's a garage not attached but still affiliated with the unit, most likely would have been addressed in this warrant. Are there further questions? No, I don't have any questions because I have a different set of facts in my head than you elicited. I mean, I have all of the facts in my head that you've elicited, so that will be hard to say. All right, we'll give you time as well to respond. Justice, good morning. My name is Lee Boyd. I represent the affilee in this particular case. Before I begin, let me say that I don't do a lot of appeals. The last time that I argued one, my hair was all black, and now it's all gray. To the extent that you don't do a lot of appeals, it's certainly much better to be the affilee than the opponent, wouldn't you say? Oh, absolutely. And, Mr. Boyd, you're a skilled practitioner and your reputation precedes you. Thanks very much. I found this case to be kind of interesting, and one of the reasons why is because it gave me an opportunity to re-read U.S. v. Leon. And U.S. v. Leon is a fascinating opinion, and it is fascinating in the light that the Supreme Court apparently wanted to carve out an exception to the Fourth Amendment, and they were trying to do a lot of balancing in what it was that they were trying to do. And they said a lot of things in U.S. v. Leon, and some of the things have been misconstrued, I think, over a period of time. When we get to talking about the good faith aspect of this, people seem to believe that just because you get in a situation where there is no probable cause for the actions by the police officers, that, therefore, good faith is going to overrule everything it is that they do. But that's not what it is that U.S. v. Leon says. You have to sit back and you have to really look at it. And, unfortunately, there have been a couple of courts that have taken U.S. v. Leon, and they have tried to bootstrap it into other situations. And one of those cases that I had occasion to read was People v. McDonough, which is a case out of the Fourth District, and it was decided October 20, 2009, and it's cited at 917 Northeast 2nd, 590. Did you cite it in your brief? No, I didn't, because I just happened to read it last night. All right. You have to file a motion asking to cite the brief unless counsel is willing to. You need to do that, because otherwise it's unfair to him. All right. I'm sorry. I'm sorry. Let me ask you, okay, what's the bottom line for you as far as the application of good faith in this case? The bottom line is that good faith just simply doesn't apply. It just simply doesn't apply. Because you have to go back to the Constitution, and you have to go back to what the Constitution requires. And the Constitution, regardless of this idea about good faith, requires that there be sufficient indicia of probable cause for the police officer to believe that, one, that there's criminal activity occurring at the place that he wants to search, and, two, that there is evidence of that criminal activity there at the time. And they just didn't have that. So if we're talking about 208, pardon me, 211, the apartment number, or we're talking about- 2E. I'm sorry, 2E. 2E, I'm sorry. Or 2A or 2B or any apartment there, we still get back to the issue of what's the probable cause for going in there? And they just simply don't have it. Now- Well, let me interrupt you again because you started the argument with the observation that this is an interesting case, and we likewise think it's an interesting case. But maybe it's most interesting because it tends to stick out. I'm not aware of another case, and maybe you could help me, assuming you cite it in your brief, where a court of review has basically found what a trial judge has found to be probable cause to issue a warrant to fall short of that showing. Do we have another probable cause warrant case found to be lacking in probable cause that you're aware of? Not that I'm aware of. All right. That was just an observation. It is unusual in that sense. But Judge Tucker, I mean, there was a full-blown evidentiary hearing before Judge Tucker, and Judge Tucker decided that this is one such case. But I do have a question regarding what are we reviewing? Are we reviewing Judge Tucker's ruling, or are we reviewing Judge Gavin's decision to issue the warrant based on probable cause? Both. But doesn't the Supreme Court talk about we must give deference to the issuing judge, and therefore it is not an over-review of that judge's determination? Well, that's exactly what they said. But in U.S. v. Leon, they clearly indicated that they do give due deference to the magistrate in what his opinion was. But they also said that the courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause. So no matter how we look at it, if we're looking at what it is that Judge Gavin had, we still have to go back and we have to determine whether or not there was probable cause in that particular complaint, affidavit search warrant, which clearly indicates or shows an indicia of probable cause. And there isn't. And I'm the guy who cross-examined the police officer there, and he couldn't come up with anything. And he couldn't come up with anything because there was nothing there. Well, but let's talk about, you know, probable cause is oftentimes said to, you have to use a common-sense approach. And given the issuance of the first warrant and the recovery of dollars as well as an alert by the dog and no recovery of contraband in the vehicle or on his person, wouldn't you say that between the vehicle and his home that it's far more probable that contraband will be in his home rather than his vehicle? I mean, isn't that a fair use of the word probability? It's more probable, given that there isn't any in the car, that it's got to be somewhere, and why not in his home? And can I, before you answer, can I interject this? Given the fact that Judge Gavin also was told in that search warrant that on two separate dates, Mr. Martinez left that home at 8 o'clock in the morning after they, I think they started surveillance at 4 or 5 o'clock in the morning. So he left 110 Hillside, dropped off the kids, came back to 110 Hillside, then left the Hillside address, went to an alley and made an exchange, goes back to the Hillside address, then leaves again and goes and makes another exchange and goes back to the Hillside address. I mean, it seems like the judge could think that probably he's going back to get the drugs, I mean, delivering the drugs, taking the money back, get another call, leave the house with the drugs, that's on one day. And then on another day, the same thing occurs, only this time, when he leaves his house and makes the exchange, they stop the offender who's buying the drugs and says, yes, I buy the drugs from this guy the same way all the time. I call him, he comes and he brings the drugs. I mean, the, what I'm saying, Judge Gavin had him leaving the house, dropping off drugs, going back. Leaving the house, having an exchange, going back. If the drugs are not in the car, where else are they other than the place that he's going back to? He left the building. There was no evidence that he left the apartment. He left the building. But let's assume for the sake of the argument that he left the apartment. Let's assume for the sake of the argument. What evidence do you have that the transactions between transaction one and transaction two were drug transactions? Because he exchanged money in an alley. Well, in one of them they said he exchanged money. No, two. Two he exchanged his money. I promise you. You know me, since we were children, so you know I know the facts. That may very well be true. This makes it even more interesting. Oh, yeah. That may very well be true. Okay, my memory is not the greatest anymore. Okay, because once I hit 50, it just started to go. Don't say that to us. We're all having a bad argument. But what I'm saying is, where did he get it from? You still don't have the tie that he got it from the apartment. Let me say this. I mean, can it be probability that he got it from, it's not proof beyond a reasonable doubt. Is it more likely than not he got it from the apartment that he, that police reports say he lived in? And that, wait a second, the police reports, because we haven't even addressed the police reports, two of the police reports, the more recent ones, the ones from November and December of 2002, both clearly have him living in apartment 2E. Both clearly have him having kids, two kids in that apartment that he had an altercation with one guy and threatened to shoot if their dog bit him or the two kids. And then we have him leaving the apartment on two occasions in the search warrant during the surveillance, dropping off two kids. Why wouldn't the judge think the guy still lives in 2E with the two kids from 2002? Why would he think that he'd moved out of 2E? No matter how it is we want to address that issue, no matter how it is we want to address that issue, we still are going to have that gap between that apartment and what it is he supposedly did, obviously. You're guessing. That's what it is that's happening. That's what it is that happened when they went and got the first search warrant. They had a better position to get that first search warrant to search him and search that car. Once they got that first search warrant and they found nothing, but what they did, they showed that the dog allegedly lost money and was supposed to be in the car. Well, it's been shown positively that just about, I cannot remember the exact number, but 90 or 95% of the money that is in the system today has some odor of narcotics on it. Oh, there's another factor that I think none of us has brought out. Okay. There's a, I think his name is Paul Jones. Yes. There's the Paul Jones guy from 2001 who's arrested with over 3,000 grams of cocaine and about almost 100 grams of heroin in an apartment that lives to this day. And then, wait, and then in the middle of this investigation, here's Paul Jones showing up at this guy's house in a car registered to Mr. Martinez, and when he stopped, he runs. And they get, I think, $1,500 from him or $1,100 and something from him in small bills. I think he's got maybe $101 bills. Another thing for the judge to consider at that house, the guy who's got this ton of drugs is coming to that house and leaves that house with money. You still go back to the same issue, the same position, because there's nobody who can testify that Paul Jones ever went into the house, into that particular apartment. You never get away from that. He's driving a car, though, that's registered to Mr. Martinez. It's not just that he went into 110 Hillside, clearly the search warrant says. And it clearly says he's driving a car registered to Mr. Martinez at that address. At the same 110 Hillside address. And I say this very, very respectfully, because you know me. So what? It's an articulable hunch. Articulable hunches is not probable. When do, I mean, when do, what number of things do you need for probable cause? How many of them do you need? This case was easy to deal with by the police. Easy to deal with. And if I may just take a little side trip. Once they arrested Cox, what was the easiest thing to do? It's to have Cox, since he says he has his connection, to call the defendant at the number he said that he had and set up a body. Then we never get into whether or not there's probable cause for the house or that apartment. Because you've got him there. So you arrest him on a two-bag job rather than going just where the supplies that the police, that the judge ruled that the police, that Judge Gabler ruled that the police reasonably had belief that the drugs were at that house. But the Constitution, I love the Constitution. We get back to the Constitution. And the Constitution requires probable cause. So if you only get him for the two bags, that's what you get him for. But we cannot reward police officers for doing things that they have no right to do. And he didn't have a right to go into the room. And the other problem, and I'm going to say this and I know I'm going to get worse. But it's just like with being a tax lawyer. Do you go to a tax lawyer and present the issue of whether or not there's probable cause to go into a house? Is he the best person to do that with? I know every single judge over in that courtroom. And again, I'm saying this with all respect, with all respect, Judge Gavin is not a criminal lawyer. Judge Gavin is not a criminal judge. If a criminal judge had been gone to by the police. Well, let's take that exact case. Let's say you had all this information in the police reports, the information that was obtained after the execution of the first search warrant, the recovery of drugs, the dog alerting, and then Mr. Jones' connection. And you go to Judge Lankin. And Judge Lankin says, I see probable cause. So we're taking Judge Gavin out of it. Then how do you deal with Judge Lankin's questions? I would say to her, as I probably have done on other cases, that based upon the factual... Well, what more do you think should have been provided in order to connect that apartment to probable cause? Well, what needed to have been done is there had to have been some indication that someone or somebody had either seen a transaction, or what they thought was a transaction, occur coming out of that apartment. For example, one of the clear ways the police do that is they get in a position to observe a person going up to the apartment, a person handing them something for U.S. currency, and then leave. The simplest thing to have done... What if this is a very, very smart individual who just simply never allows that to happen? I mean, are the police hands tied so that they can never, ever get into that unit? No. They can get into that unit, but they've got to use some kind of method to get in there to make a determination. They did attempt one method, didn't they? In this instance. They asked him, let me search the unit. And he said no. That's right. Or he denied any connection to the unit, which maybe that's incriminating. His denial. Especially with his license plate. I mean, his driver's license says he lives at 110. That's another. He was not the leaseholder to the apartment. He wasn't even the leaseholder to that apartment. Well, that's not... Those facts aren't... No, it's in the... It's not in the search warrant, and it's not in the transcripts of the hearings that I've read. That's what I thought it was. I might be wrong about that. You're going to have to sum up, Counselor. Okay. Simply put, there was no problem with bankruptcy. So my humble opinion, the issue is whether or not there's good faith. And good faith under these circumstances, it's not even a relevant issue. It doesn't exist here. If this were a situation where an officer arrested someone based upon a warrant, and later on they found out that the clerk's office had not pulled the warrant out of the system or something like that, that's good faith. But here, there is no evidence of good faith. Thank you. Thank you very much. Mr. Connors, just briefly. I'll try to keep this as brief as possible, but I do need to return this Court's focus to the ruling of the Circuit Court in this case. There was not a... The Court represents it as a full-blown hearing, and Counsel represent that he did cross-examine the officer. Well, I don't know about a full-blown hearing, but he got all the hearing he needed. So there's no agreement requested, is there? The Court did not have a hearing on it. It must be noted that the Court's ruling... Again, I direct this Court's attention to the ruling of the Circuit Court. Okay. The Court found a technical defect. It did not determine that there was a lack of probable cause. Page 13 and 14 of the record says, I find that because... of the specificity for the TUI apartment based upon the two different addresses that are given for the registration and the fact that when the Hillside address is listed, it's not listed as Hillside. That is not a determination as to a lack of probable cause. So to the extent that this Court is concerned about the good faith exception swallowing up probable cause requirement, in this case it's not required because there is not a ruling by the Circuit Court that there is not probable cause. Let me ask you this question. Did Judge Tucker cite a case that said the incorrect listing or the insufficient connection or a technical defect of the warrant is enough to avoid the warrant? The Court cited no cases, and that's why the people are in a position to say the Court's ruling was incorrect. Then let's go to the nature of the hearing itself. What was the motion directed at? The motion was the defense motion to quash based upon lack of probable cause. There was no evidence presented discussing... Is your argument that Judge Tucker sort of modified that motion to one challenging only technical defects in the warrant? No, the motion itself requested relief. And it requested relief based on the absence of probable cause. It requested relief based upon the fact that there was no evidence tying the defendant to narcotics transactions from that. That's clearly not what the Circuit Court's ruling was predicated upon. So if this Court looks at the terms of the motion, the same arguments advance now. And the argument advance now is that the defendant was never seen selling drugs from a park to me. We know from Cox that the defendant didn't sell drugs from that location. They met in alleyways. They met in parking lots. That's how they conducted business. The request of defense counsel to say we need a second by, that that would be sufficient. We have a by. We have the knowledge. We have the identification. We have all of that. Justice Lampkin was correct to note that Paul Jones, not brought up there, not only ties the defendant through a prior transaction, but to that address, the car was registered to that address. And is Paul Jones in the affidavit itself? Yes, Paul Jones is in the affidavit. And so is the address of the white Chevrolet that he was driving that was seen outside of that apartment. All right. We also do have some questions brought up about the reasonable and neutral magistrate, whether or not that insulates the firm review. Again, the burden then falls upon the defendant to demonstrate the impropriety of that ruling. In the people's brief, we cite People v. Bryant, which says that you cannot use the appeal from a ruling attacking a motion to quash, to challenge the issuance of the warrant. Justice Garcia, that's a question you ask the counsel. Right. That's not been done before. And in this case, it's exactly what Backdoor is trying to do by saying, you know, Justice Gavin shouldn't have done it. That's a separate argument. That's not what is before this Court. This Court doesn't have the necessary power to do that. Other than that, it's not just the recovery of two bags from the transaction of Mr. Cox. The recovery of those two bags is what led more towards the notion of probable cause. They could have stopped and said, we're just going to get two bags and stop the case there. It was just a further investigatory tool that was necessary. So for all those reasons, you know, the people request that this Court reverse the ruling of the circuit court. All right. Thank you very much. Thank you very much. Thank you.